UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS STINE,

    Plaintiff,

v.

PRATT & WHITNEY AUTOAIR, INC. and
BRUCE GALLAGHER,

    Defendants.
                                      /

File No. 1:13-CV-946

HON. ROBERT HOLMES BELL

## **OPINION**

This is a an employment discrimination case filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, the Michigan Persons with Disabilities Act, Mich. Comp. Laws § 37.1101, the Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, and Michigan common-law. The matter is presently before the Court on Defendant Gallagher's (Defendant) Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (Mot., ECF No. 6.) Plaintiff has filed a Response (ECF No. 8), to which Defendant has filed a Reply (ECF No. 9). For the reasons that follow, Defendant's motion will be denied.

Two issues are before the Court. The first is whether a claim for tortious interference with contract can lie where part of the motivation of the alleged tort-feasor is racial animus. The second is whether Defendant, as an agent of Plaintiff's employer, acted as a third-party in interfering with Plaintiff's economic expectancy. Based on the resolution of these issues, the Court holds that Plaintiff has stated a claim for tortious interference against Defendant.

I.

The following facts[1] are taken from allegations contained in the complaint and in the summaries contained in the parties' briefs. Plaintiff began working for Defendant Pratt & Whitney Autoair in February 2008. Plaintiff's ethnic heritage is half-Asian and half-Caucasian. Plaintiff's Asian heritage is obvious. Plaintiff's co-workers made frequent anti-Asian remarks, which Plaintiff reported to management. His co-workers also harassed him by playing music with anti-Asian and anti-homosexual[2] lyrics and defacing property near his work station with discriminatory messages. Complaints to management went unheeded.

> Plaintiff makes the following allegations with respect to Defendant:
>
> On or about June 22, 2009, while welding, Defendant Gallagher approached Plaintiff and ordered him to clean up the vertical saw before he left for the day. (Compl. ¶ 18, ECF No. 1.)
>
> Plaintiff had used the saw earlier and thought that he had cleaned it up. He returned to verify that the saw was indeed cleaned. It was cleaner than the other machines in the area that had been used by Plaintiff's co-workers. (*Id.* ¶ 19.)
>
> Later that same day, Defendant Gallagher returned to once again order the Plaintiff to order him (sic) to clean the saw. (*Id.* ¶ 20.)
>
> When the Plaintiff advised Defendant Gallagher that it was clean and cleaner than the other machines his co-workers had used, Defendant Gallagher responded "Alright, you are going to get written up for this!" (*Id.* ¶ 21.)
>
> On or about March 10, 2012, Defendant Gallagher approached the Plaintiff and told him to weld for the last 10 minutes of the shift. Plaintiff complied and realized that all of his Caucasian coworkers were allowed to clean up their work areas during that same 10 minute timeframe. (*Id.* ¶ 39.)

---

[1]As explained below, the facts contained in Plaintiff's complaint are taken as true.

[2]Plaintiff does not allege that he is homosexual, but does refer to his co-worker's anti-homosexual conduct as discriminatory.

During one lunch break in June 19, 2012, Plaintiff laid down on the floor to rest because his back hurt. In order to block the light he put his work gloves over his eyes. A new blower had been installed in the break room, and the sound from it prevented Plaintiff from hearing the bell to return to work. Fifteen minutes after the bell rang, Plaintiff realized his mistake and returned to work.

> Shortly afterward, Defendant Gallagher fired the Plaintiff for sleeping on the job. Despite Plaintiff explaining that he wasn't sleeping, it fell on deaf ears. Defendant Gallagher was finally able to find a way to fire the Plaintiff. (*Id.* ¶ 43.)
>
> Plaintiff has been damaged by the continual improper disciplines provided by Defendant Gallagher. (*Id.* ¶ 64.)
>
> Defendant Gallagher had a duty to perform [his] job in a competent manner without discriminating or taking actions adverse to the Plaintiff. (*Id.* ¶ 65.)
>
> Defendant Gallagher breached his duty by viewing the Plaintiff as being unable to do his job and discriminating against him in meetings and in public amoung his coworkers. (*Id.* ¶ 66.)
>
> Defendant Gallagher breached his duty by writing improper discipline and refusing to recognize the Plaintiff's complaints about harassment and improper treatment by his co-workers. (*Id.* ¶ 67.)
>
> Defendant Gallagher had a duty to not to (sic) discriminate against Plaintiff due to his race. (*Id.* ¶ 68.)
>
> Defendant Gallagher had a duty not to interfere with Plaintiff's employment. (*Id.* ¶ 69.)
>
> Defendant Gallagher breached that duty by continuing to provide improper discipline in an effort to fire the Plaintiff. (*Id.* ¶ 70.)

Plaintiff filed his lawsuit on August 28, 2013. In Count IV, he alleges that Defendant tortiously interfered with his contract with Defendant Pratt & Whitney Autoair, Inc. Defendant now moves to dismiss for failure to state a claim upon which relief can be granted, arguing that: (1) a claim for tortious interference cannot be based on racial discrimination under *McClements v. Ford Motor*

*Company*, 702 N.W.2d 166 (Mich. 2005); and alternatively (2) Defendant cannot be liable for tortious interference because he is an agent of one of the parties to the contract.

II.

**A.     Motion Standards**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible

on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677), *cert. denied*, 132 S. Ct. 1583 (2012). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     *McClements* and Tortious Interference**

Defendant first argues that in *McClements*, "the Michigan Supreme Court squarely addressed whether a common law remedy existed for alleged workplace discrimination, finding that it does not." (Def.'s Br. 4, ECF No. 7.) In *McClements*, the plaintiff claimed she had been sexually harassed in the workplace. She attempted to bring, among others, a claim for negligent retention against her employer for its failure to terminate someone with a known propensity for sexual misconduct.

The court noted that it had previously held an employer liable for negligent retention when the underlying conduct was a common-law tort. The right the plaintiff sought to enforce—to be free of sexual harassment in the workplace—was "wholly a creature of statute." *McClements*, 702 N.W.2d at 171. Therefore, because the language of the statute also provides the exclusive remedy for enforcement, the court held that the plaintiff could not bring a common-law claim based on a statutory right. *Id.*

Defendant argues that similarly, here, Plaintiff's tortious interference claim against Defendant is "premised on conduct for which no common law claim existed prior to the enactment of the ELCRA." (Def.'s Br. 4.) However, there are key differences between what Plaintiff is claiming and *McClements*. In *McClements*, the plaintiff attempted to hold her employer liable at common law for

failing to protect a right created by statute. In the present case, Plaintiff is attempting to hold Defendant, his supervisor, liable for a common-law tort. The fact that Defendant may have been motivated by discriminatory animus that separately creates a cause of action does not mean that Plaintiff cannot bring a separate action for a common-law tort Defendant allegedly admitted.

**C.     Third-Party Corporate Agent**

Defendant also argues that Plaintiff's tortious interference claim is implausible as a matter of law because in order to state a claim for tortious interference, in addition to the common law elements (on which the parties agree) "it is well settled that the plaintiff must also establish that the alleged interferer was a 'third party' to [the] business relationship or expectancy." (Def.'s Br. 6, ECF No. 7.) Defendant argues that because he is an agent of Plaintiff's employer, he cannot, as a matter of law, be a third-party to the business relationship with which he allegedly interfered. Plaintiff responds that while such is the general rule, an exception exists where an agent of a corporation acts out of personal animus.

Under Michigan law, in order to maintain a claim of tortious interference with contract, a plaintiff must establish that the defendant was a "third party" to the contract or business relationship. *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993). "[C]orporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Id.* A corporate agent may be liable if he acts for his own benefit "or pursuant to a personal motive." *Cedroni Assoc. v. Tomblinson, Habrun Assoc.*, 802 N.W.2d 682, 699 (Mich. Ct. App. 2010) *rev'd on other grounds Cedroni Ass'n, Inc. v. Tomblinton, Harburn Assocs., Architecs & Planners Inc.*, 821 N.W.2d 1 (Mich. 2012). The law does not, however, require that the acts a defendant undertakes be fraudulent or unlawful, but will also

6

hold liable one who does "lawful acts with malice and without justification." *Feaheny v. Caldwell*, 437 N.W.2d 358, 364 (1989).

Taking the allegations contained in the complaint as true, the Court is satisfied that Plaintiff has stated a claim upon which relief can be granted. Defendant sent Plaintiff to clean a saw that was already clean, and then threatened to discipline him when Plaintiff told him it was already clean. Defendant instructed Plaintiff to work a machine right to the end of his shift, forcing him to stay late and clean his workstation, while allowing other workers to clean their workstations and leave on time. Finally, Defendant fired Plaintiff for sleeping on the job and disbelieved Plaintiff when he said he was not sleeping. Taken together, the allegations of disparate treatment are sufficient to show that Defendant harbored animus toward Plaintiff. Therefore Plaintiff has stated a plausible claim thatt his firing was undertaken "with malice and without justification." *See Feaheny*, 437 N.W.2d at 364.

Because Plaintiff has alleged facts that, if true, would entitle him to relief on its claim of tortious interference with contract against Defendant, he has not failed to state a claim as required by Rule 12(b)(6).

### III.

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The Court will issue an Order consistent with this Opinion.

Dated: June 16, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE